**ORIGINAL**

**GREENBERG TRAURIG, LLP**
Jeffrey B. Sklaroff
Harry H. Rimm
885 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 801-2100
Facsimile: (212) 224-6110

FILED
CLERK, U.S. DISTRICT COURT

2004 JUL 30  P 3: 45

DISTRICT OF UTAH

BY: _____
        DEPUTY CLERK

Counsel for Amici Curiae

-------------------------------------------------------------------

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

-------------------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 02-CR-708 (PGC) |
| Plaintiff, | : | **BRIEF OF AMICI CURIAE ADDRESSING THE CONSTITUTIONALITY OF MANDATORY MINIMUM SENTENCES UNDER FEDERAL LAW** |
| v. | : | |
| WELDON H. ANGELOS, | : | |
| Defendant. | : | |

-------------------------------------------------------------------

This Court is called upon to determine the cause of defendant Weldon Angelos ("Angelos"), a twenty-four year old first-time offender who stands before it awaiting imposition of sentence. Angelos faces a draconian 55 year (660 months) mandatory minimum term of incarceration in connection with three charges in an indictment and faces a range with a minimum of more than another 8 years (97 months) in connection with the remaining thirteen charges.

Amici Curiae, a group of 29 former United States District Court judges, United States Circuit Court judges and United States Attorneys[1] who bring an expertise in federal

---

[1]  A list of these 29 individuals is annexed hereto.



criminal law and federal sentencing issues based on hundreds of years of collective experience, submit this amicus brief in support of Angelos' sentencing position and respectfully urge this Court to conclude that the mandatory minimum sentence specifically contemplated in this case is unconstitutional.

## PRELIMINARY STATEMENT

Angelos is facing a mandatory minimum sentence of 55 years for carrying -- not using or even displaying -- a firearm in an ankle holster while selling several hundred dollars of marijuana on two occasions and for having firearms in his residence, which were discovered after a consent search, during the same time period when he had sold the marijuana.  Such a mandatory minimum sentence, which in this case relates to only three of the sixteen charges for which Angelos is to be imprisoned,[2] is so grossly disproportionate to the offenses committed by this first-time offender as to be not only manifestly unjust, but useful to illustrate how the application of a mandatory minimum sentence can constitute (a) cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution; (b) a violation of the separation of powers doctrine; (c) a violation of the Due Process Clause of the United States Constitution; and (d) a violation of the right to a jury trial under the Sixth Amendment of the United States Constitution.  For these reasons, Amici Curiae respectfully request that this Court conclude that the mandatory minimum sentence being contemplated for Angelos is unconstitutional.

---

[2]  For all of the other thirteen charges, Angelos faces a sentencing range between 97 months and 121 months.

## STATEMENT OF FACTS

Angelos was initially charged in an indictment that contained only one count in violation of 18 U.S.C. § 924(c), and the government offered him a plea deal with a promise of 15 years imprisonment. After Angelos rejected the government's offer, the government had a grand jury return a superseding indictment which added four new counts under 18 U.S.C. § 924(c). Angelos then went to trial on five 924(c) counts set forth in a twenty-count second superseding indictment (the "Indictment"). He was convicted of sixteen counts after trial by jury.

Counts two, four and ten of the Indictment charged Angelos with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Under the present federal sentencing scheme, section 924(c) requires the imposition of a mandatory minimum and consecutive sentence of 55 years on each of these three counts as follows: 5 years under count two, plus 25 years under count four, plus 25 years under count ten.

Count two charged that on or about May 21, 2002, Angelos carried and possessed a firearm in an ankle holster during the sale of a half pound of marijuana to an informant for $350. The sale took place in the car Angelos was driving. Count four charged that on or about June 6, 2002, Angelos carried and possessed a firearm in an ankle holster during a second sale of a half pound of marijuana to the same informant for another $350. Count ten charged Angelos with possessing firearms in his residence while he had been selling marijuana. The firearms were discovered after Angelos consented to a search on or about November 15, 2002.

Angelos is presently twenty-four years old and is the father of two small children: Anthony is six years old, and Jessie is age five. See Angelos Presentence Report, dated Mar. 19, 2004 (the "PSR"), ¶ 85. Angelos is a diabetic who must regulate his sugar levels (see id. ¶ 86)

and has been diagnosed with a major psychiatric illness -- manic depression.  See id. ¶ 87.

Angelos has no prior adult criminal convictions.  See id. ¶ 74.

## ARGUMENT

Amici Curiae maintain that the mandatory minimum sentence to which Angelos is subject violates various provisions of the United States Constitution.  Accordingly, the Court should conclude that such a sentence cannot be imposed in this case.

**I.      Angelos' Contemplated Mandatory Minimum Sentence Is
          Cruel And Unusual In Violation Of The Eighth Amendment.**

From the enunciation of the Old Testament's principle of an "eye for an eye" and its interpretation that "a fair and equitable relation must exist between the crime and the punishment" (The Pentateuch and Haftorahs, *Exodus* 21:24; nn. 23-24; Additional Notes at p. 405 (Dr. J.H. Hertz ed., 1979)) to the time when Cicero declared to "[l]et the punishment match the offense" (Marcus Tullius Cicero, *De Legibus*, III, 20), there has always been a unique proportionality connection between punishment and the crime triggering the punishment.

Here, Angelos' mandated sentence of 55 years should be declared unconstitutional because (a) it is grossly disproportionate to the offenses that Angelos committed and (b) it is contrary to the evolving standards of decency which are the hallmark of our civilized society.  For both of these reasons, or for either one, this Court should find that such a sentence violates the Eighth Amendment of the Constitution.

**A.      Angelos' Proposed Sentence Is Grossly Disproportionate
          To The Offenses For Which He Was Convicted.**

The application of the mandatory minimum mechanism to the facts of Angelos' case is unconstitutional under the Eighth Amendment because the resulting sentence would be grossly disproportionate to the offenses for which Angelos is to be punished.  See Harmelin v.

<u>Michigan</u>, 501 U.S. 957, 997-98 (1991) (Kennedy, J., concurring).   Simply put, Angelos'

punishment would not fit the crimes, and this Court must not impose such a sentence.

      The United States Supreme Court has long held that there is a proportionality

component to the Eighth Amendment's cruel and unusual punishment provision.  <u>See</u> <u>Weems v.</u>

<u>United States</u>, 217 U.S. 349 (1910); <u>see also</u> U.S. Const. amend. VIII.  In <u>Weems</u>, the Supreme

Court emphasized that "it is a precept of justice that punishment for crime should be graduated

and proportioned to offense" and concluded that a punishment of fifteen years in irons at hard

labor for falsifying a public record was cruel "in its excess of imprisonment."  <u>Id.</u> at 366-67, 377;

<u>see</u> <u>Robinson v. California</u>, 370 U.S. 660, 666-67 (1962) (statute criminalizing being addicted to

the use of narcotics "inflicts a cruel and unusual punishment").

      In <u>Solem v. Helm</u>, 463 U.S. 277, 284, 290 (1983), the Supreme Court "h[e]ld as a

matter of principle that a criminal sentence must be proportionate to the crime for which the

defendant has been convicted" and that the Eighth Amendment prohibits "sentences that are

disproportionate to the crime committed."  In so doing, the Court constructed and engaged in a

proportionality analysis under the Eighth Amendment that was to be guided by objective factors.

<u>See</u> <u>id.</u> at 290-92.[3]

      Under <u>Solem</u>, the "gravity of the offense and the harshness of the penalty" were

to be considered initially.  <u>Id.</u>  The sentencing court must then "compare the sentences imposed

---

    [3]  These objective factors were lifted from the dissent in <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980).  In <u>Rummel</u>, and unlike the case before this Court, a three-time felon was sentenced to a mandatory life sentence under a habitual offender statute designed to deter repeat offenders.  The Supreme Court noted that a state government has an interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law" (<u>id.</u> at 276) and that a "three-time offender's conduct supports inferences about his ability to conform with social norms that are quite different from possible inferences about first or second-time offenders."  <u>Id.</u> at 282 n.27.  Finding that Rummel -- unlike Angelos in the case before this Court -- was "one who is simply unable to bring his conduct within the social norms prescribed by the criminal law" and that he would be eligible for parole in 12 years, the Supreme Court concluded that a life sentence did not constitute cruel and unusual punishment under the Eighth Amendment.  <u>Id.</u> at 280-85.

on other criminals in the same jurisdiction." Id. at 291.  In addition, the court was to "compare

the sentences imposed for commission of the same crime in other jurisdictions." Id. at 291.  The

Solem Court concluded that the defendant's sentence of life imprisonment without the possibility

of parole for uttering a "no account" check for $100 was "significantly disproportionate" to his

crime notwithstanding the defendant's extensive criminal record and that it violated the Eighth

Amendment. Id. at 303.

After Solem, the Supreme Court declared that the Eighth Amendment contains a

"narrow proportionality principle" applicable to "noncapital sentences" (Harmelin, 501 U.S. at

996-97 (Kennedy, J., concurring)) and forbids "extreme sentences that are 'grossly

disproportionate' to the crime." Id. at 1001 (quoting Solem, 463 U.S. at 288).[4]  While the

preliminary focus was on the nature of the crime and its relation to the punishment imposed,

Justice Kennedy noted that "intrajurisdictional and interjurisdictional analyses" are appropriate

when the "threshold comparison of the crime committed and the sentence imposed leads to an

inference of gross disproportionality." Id. at 1005.  In finding that the offense in Harmelin --

easily distinguishable from Angelos' offenses -- involved a large quantity of undiluted cocaine

that "threatened to cause grave harm to society," Justice Kennedy concluded that the sentence

did not violate the Eighth Amendment and that therefore a comparative analysis did not have to

be performed. Id. at 1002-1005.

More recently, the Supreme Court confirmed that the gross disproportionality

principle -- "the precise contours of which are unclear" -- is applicable to sentences for terms of

---

[4]    In fact, conditions of confinement also violate the Eighth Amendment if they are "grossly
disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 346-47
(1981); see Herrera v. Williams, No. 03-2248, 2004 WL 1098851, at *1 (10th Cir. May 18, 2004) (quoting id.)
(defendant must allege facts which are "grossly disproportionate to the severity of the crime warranting
imprisonment").

years (<u>Lockyer v. Andrade</u>, 538 U.S. 63, 72-73 (2003)); that there was a "lack of clarity" in its

precedents (<u>id.</u> at 74 n.1); that it had "not established a clear or consistent path for courts to

follow" (<u>id.</u> at 72-73); and that the proportionality principles from Justice Kennedy's <u>Harmelin</u>

concurrence "guide our application of the Eighth Amendment." <u>Ewing v. California</u>, 538 U.S.

11, 23-24 (2003); <u>see</u> <u>Hawkins v. Hargett</u>, 200 F.3d 1279, 1282 (10th Cir. 1999) ("Justice

Kennedy's opinion controls because it both retains proportionality and narrows <u>Solem</u>."), <u>cert.</u>

<u>denied</u>, 531 U.S. 830 (2000).

      In the last few months, the Ninth Circuit applied these very principles and held

that a sentence of twenty-five years to life for three shoplifting convictions, with no eligibility for

parole until the defendant had served at least twenty-five years, was grossly disproportionate to

the crimes committed in violation of the Eighth Amendment.  <u>See</u> <u>Ramirez v. Castro</u>, No. 02-

56066, 2004 WL 868517 (9th Cir. Apr. 19, 2004).

      The <u>Ramirez</u> court followed <u>Harmelin</u> and considered its factors, each of which is

also relevant to Angelos' case.  Initially, the Ninth Circuit considered whether the "extreme"

sentence was justified by the gravity of defendant's most recent offense and criminal history.  <u>Id.</u>

at *12.  Noting that the defendant's most recent offense, which was the nonviolent shoplifting of

a $199 videocassette recorder (a "VCR"), did not "'threaten[] to cause grave harm to society'"

(<u>id.</u> (quoting <u>Harmelin</u>, 501 U.S. at 1003)); that the defendant's prior criminal history was

"minimal" and "nonviolent" (<u>id.</u> at *13-14); and that the defendant "had never been sentenced to

nor served any time in state prison prior to committing the instant petty theft" (<u>id.</u> at *14), the

court concluded that the sentence was "grossly disproportionate to the crimes he committed in

violation of the Eighth Amendment." <u>Id.</u>

In addition, the <u>Ramirez</u> court engaged in an "intrajurisdictional comparative analysis" of defendant's sentence and found that "California punishes far more serious and violent crimes much less severely." <u>Id.</u> at *15-17.  The court further found that there "does not appear to be any other jurisdiction in the country that would have imposed a sentence . . . comparable to 25 years to life in prison" for shoplifting a $199 VCR.  <u>Id.</u> at *17-18.  For all of these reasons, the Circuit Court granted the habeas petition.  <u>See id.</u> at *21.

In the case before this Court, Amici respectfully maintain that Angelos' proposed mandatory minimum sentence is grossly disproportionate to the offenses committed based on the <u>Harmelin</u> test outlined in Justice Kennedy's concurrence (<u>see Harmelin</u>, 501 U.S. at 996-97 (Kennedy, J., concurring)) and that the Court must engage in a proportionality analysis.  <u>See</u> <u>Hawkins v. Champion</u>, No. 92-5072, 1992 WL 372598, at *4 (10th Cir. Dec. 18, 1992) (noting that "if we had not remanded for dismissal on nonexhaustion grounds, we would have remanded for further development of proportionality issue" because "[t]he district court did not undertake a full Eighth Amendment proportionality review of [defendant's] sentence, taking into account his age, developmental age, lack of a prior record, gravity of the offense, harshness of the penalty, comparative sentences (if deemed appropriate), and so on.").  While neither <u>Harmelin</u> nor <u>Hargett</u> outlined the criteria for a court to consider in making a threshold determination of gross disproportionality, a determination of whether a sentence violates the Eighth Amendment should be based on the facts of the case.

(i)     <u>Angelos' Offenses And The Contemplated Penalty</u>

Preliminarily, this Court should compare the gravity of the offenses to the harshness of the contemplated penalty to determine if the penalty would be grossly disproportionate to such offenses.  In weighing the gravity of the offenses, the Court should

consider the felonies of conviction and the defendant's criminal history (see Ewing, 538 U.S. at 29), as well as "the harm caused or threatened to the victim or society, and the culpability of the offender." Solem, 463 U.S. at 292-294. Simply put, "[d]isproportionality analysis measures the relationship between the nature and number of offenses committed and the severity of the punishment inflicted upon the offender." Id. at 288.

First, Angelos has no prior adult criminal convictions (see PSR ¶ 74) and is to be "treated as a first-time offender under the Sentencing Guidelines." Court's Order, dated Feb. 17, 2004 (the "Order"), at 4. While Angelos did sustain a juvenile adjudication in 1996 which resulted in local detention for six days and probation for three months (see PSR ¶ 73), he is simply not the repeat offender with a track record of not conforming to societal standards as was the case with the defendants in the Rummel, Solem, Ewing and Andrade cases. To the contrary, Angelos has no adult criminal history, and his juvenile history is both minimal and nonviolent.

Second, the sentence-triggering criminal conduct, or the nature of the offenses, must be examined. Here, on two occasions, and while selling small amounts of marijuana, Angelos possessed a handgun under his clothing, but he never displayed, brandished or used the handgun. On a third occasion, Angelos was found to have possessed handguns in his residence. In fact, this Court has heard testimony from Angelos' family about the role that guns have played in recreational activities, including hunting, and Angelos himself has indicated that the gun was solely for defensive use -- to be used solely for his own protection. See PSR ¶ 28. This also is a case involving minimal amounts of marijuana, as opposed to large amounts, or thousands of doses, of "undiluted cocaine." Harmelin, 501 U.S. at 1008. Instead, quantity was minor; street value was a few hundred dollars; and no evidence has been presented to this Court of any threat by Angelos "to cause grave harm to society." Id. at 1002.

Moreover, Angelos did not engage in force or violence, or threats of force or violence, in furtherance of or in connection with the offenses for which he has been convicted. No offense involved injury to any person or the threat of injury to any person. It is well-established that nonviolent crimes are less serious than crimes marked by violence or the threat of violence (see Solem, 463 U.S. at 292-93) and that the absence of violence affects the strength of society's interest in punishing a particular criminal. See Rummel, 445 U.S. at 275.

Third, Angelos' culpability is a crucial consideration. His motive and intent, clear from the record, were never to act in a violent manner nor to inflict bodily injury on anyone. Again, Angelos admitted that his gun was to be used solely for his own protection. See PSR, ¶ 28.

Indeed, the government does not even try to justify Angelos' sentence "as necessary either to deter other persons or to isolate a potentially violent individual." See Rummel, 445 U.S. at 302 (Stevens, J., dissenting). This case is simply unlike, and easily distinguishable from, the numerous Tenth Circuit decisions finding no Eighth Amendment violation *because of* the use of violence. See e.g., Payne v. Ward, No. 01-5107, 2001 WL 1334701, at *2 (10th Cir. Oct. 30, 2001) (no Eighth Amendment violation for sentence following twenty-three convictions of rape); Haley v. Gibson, 229 F.3d 1163 (10th Cir. 2000) (no Eighth Amendment violation because sentence not disproportionate to crime of first degree murder); United States v. Jones, 213 F.3d 1253, 1262 (10th Cir. 2000) (no Eighth Amendment violation where sentence imposed after defendant engaged in violent crime spree across Utah after sustaining "multiple convictions for previous armed robberies"); Hargett, 200 F.3d at 1284 (no Eighth Amendment violation where crimes -- rape, sodomy, robbery and burglary convictions -- involved "threats of violence, and repeated sexual attacks" and there was a possibility of parole),

cert. denied, 531 U.S. 830; United States v. Montoya, 85 F.3d 641 (10th Cir. 1996) (no Eighth Amendment violation where defendant convicted of shooting nine people, including federal and local police officers); Hunt v. Cody, 60 F.3d 837 (10th Cir. 1995) (no Eighth Amendment violation for robbery at gunpoint following a felony conviction), cert. denied, 516 U.S. 1126 (1996).

Similarly, this matter is far different from the myriad Eighth Amendment cases involving other illegal drugs, like cocaine or heroin, which Congress -- through legislation like 21 U.S.C. § 841 -- has determined should be treated more seriously than marijuana. See e.g., United States v. Robertson, 45 F.3d 1423, 1447-48 (10th Cir. 1995) (no Eighth Amendment violation where defendant had "extended and serious criminal history" and was "head of the conspiracy to distribute crack cocaine"); United States v. Cereceres-Loya, 25 F.3d 1058 (10th Cir. 1994) (no Eighth Amendment violation for sentence for importation of more than one kilogram of heroin and possession with intent to distribute more than one kilogram of heroin where defendant previously convicted of a felony drug offense); United States v. Angulo-Lopez, 7 F.3d 1506, 1509 (10th Cir. 1993) (no Eighth Amendment violation where defendant "involved in conspiracy to distribute 47.82 kilograms of cocaine base"); United States v. Easter, 981 F.2d 1549, 1557 (10th Cir. 1992) ("sentence for possession with intent to distribute a kilogram of cocaine base does not violate the Eighth Amendment").

Finally, this Court should consider the severity of the punishment to be inflicted upon Angelos. As Justice Breyer has observed, the length of a prison term in "real time," or the amount of time that an individual is likely to actually to serve in prison, must be considered. Ewing, 538 U.S. at 37-43 (Breyer, J., dissenting). Angelos, who is currently twenty-four years old, is facing a mandatory minimum sentence of 55 years (660 months) in prison in connection

with only three charges in the Indictment and will face a range with a minimum of more than

another 8 years (97 months) in connection with the remaining charges.

Angelos is not eligible for parole in the federal system, and even with good time

credits under 18 U.S.C. § 3624(a), would still have to serve more than 53 years (85% of 756

months) in prison -- or virtually the remainder of his life -- before being released.  A sentence of

such excessive length does not comport with "the goals of the penal function in the criminal

justice system: to punish justly, to deter future crime, and to return imprisoned persons to society

with an improved change of being useful, law-abiding citizens."  Rhodes v. Chapman, 452 U.S.

337, 352 (1981).

For the foregoing reasons, this Court should make a threshold determination that

Angelos' proposed sentence would be grossly disproportionate to his committed offenses and

proceed to consider the two additional Harmelin factors.

> (ii)   Intrajurisdictional Review

The next Harmelin factor involves an intrajurisdictional analysis, comparing

Angelos' contemplated sentence with sentences imposed on other criminals in the same

jurisdiction.  Generally, "[i]f more serious crimes are subject to the same penalty, or to less

serious penalties, that is some indication, that the punishment at issue may be excessive."

Solem, 463 U.S. at 291.  More pointedly, the "imposition of the same punishment upon persons

who have committed completely different types of crimes raises serious doubts about the

proportionality of the sentence applied to the least harmful offender."  Rummel, 445 U.S. at 301.

In this case, Angelos is set to receive a sentence (more than 750 months) harsher

than the sentences given to offenders (repeat or otherwise) of far more serious crimes.  In fact,

this Court has observed that offenders who commit more serious offenses than those for which

Angelos has been convicted receive less severe sentences under the federal sentencing scheme. See Order at 5-7 ("A terrorist who detonates a bomb in a public place intending to kill a bystander will serve a prison sentence of no more than 235 months . . . A second-degree murderer will serve a prison term of no more than 168 months . . . A rapist will serve a prison term of no more than 87 months."). Clearly, Angelos is set to receive a sentence more severe than sentences for most violent crimes under this scheme. See id. Indeed, crimes directed against the person -- like murder and rape -- and the property of another do not carry such harsh mandatory sentences. Because Angelos is "treated in the same manner as, or more severely than, criminals who have committed far more serious crimes" (Solem, 463 U.S. at 299), this Court should conclude that this second factor has been satisfied.

(iii)   Interjurisdictional Review

The final consideration under Harmelin is the interjurisdictional comparison, by which the Court compares Angelos' proposed sentence with sentences imposed for the commission of the same offenses in other jurisdictions. In this regard, "[t]he government concedes that the federal law punishes the instant offenses more severely than equivalent statutes in any of the fifty states." Government's Response Memorandum, dated Apr. 7, 2004, at 23. The government further notes that Angelos would receive only three consecutive thirty-six month sentences in the state of Washington and only a total of five to seven years in Utah state court. Id. nn.18-19.

Angelos' sentence, as conceded by the government in its brief, is unique in its harshness, as he is "treated more severely than he would have been in any other State." Solem, 463 U.S. at 300. Because a sentence that exceeds those for comparable offenses in other jurisdictions lends credence to the view that such a sentence is unconstitutionally

13

disproportionate (see Rummel, 445 U.S. at 300), this Court should conclude -- with this third factor now satisfied -- that Angelos' proposed sentence of 55 years would be grossly disproportionate to the committed offenses in violation of the Eighth Amendment and impose a proportionate and more fair sentence that will punish Angelos and vindicate the law.

      B.     Angelos' Proposed Sentence Violates
            Society's Evolving Standards of Decency.

It is well-established that the Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency' . . . against which we must evaluate penal measures" (Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citation omitted)) and "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101 (1958). The "basic concept underlying the Eighth Amendment is nothing less than the dignity of man . . . [and] the Amendment stands to assure that this power be exercised within the limits of civilized standards." Id. at 100; see American Bar Association ("ABA") Standards for Criminal Justice: Sentencing, Standard 18-2.4 (3d ed. 1994) ("The legislature should ensure that maximum authorized levels of severity of sentences and presumptive sentences are consistent with rational, civilized, and humane values. Sentences authorized and imposed, taking into account the gravity of the offenses, should be no more severe than necessary to achieve the societal purposes for which they are authorized.").

In this case, under evolving standards of decency, the imposition of the proposed punishment would be cruel and unusual. As the Court knows, just in the last few weeks, the ABA's Justice Kennedy Commission has issued a Recommendation urging the federal and state governments to repeal mandatory minimum sentences. Angelos is a twenty-four year-old first time offender who is facing a mandated term of 55 years in connection with only three of the sixteen charges for which he will be imprisoned.

Such a punishment for a first-time offender does not punish justly and is not meant to rehabilitate Angelos so that he may return to society at some point and be a useful and law-abiding citizen; instead, it denies Angelos a second chance that would benefit him and his community and does nothing more than ruin a life. <u>See Deal v. United States</u>, 508 U.S. 129, 146 n.10 (1993) (Stevens, J., dissenting). Because the proposed mandatory minimum punishment of 55 years is incompatible with our society's evolving standards, such a punishment violates the Eighth Amendment. <u>See</u> ABA Standard 18-3.21(b) ("A legislature should not prescribe a minimum term of total confinement for any offense.").

## II.   <u>Angelos' Proposed Mandatory Sentence Violates The Separation of Powers.</u>

We recognize that the United States Supreme Court has stated that Congress, reflecting the will of the people, may properly enact mandatory minimum statutes and do not suggest that a carefully crafted mandatory minimum statute, viewed in isolation, would violate the separation of powers doctrine. We submit, however, that the constitutionality of the mandatory sentencing statute at issue here cannot be judged in isolation, but must be assessed against the broader background of an overall sentencing scheme adopted by Congress which has now effectively taken the traditional sentencing discretion of the judiciary and placed it in the hands of the executive.

Mandatory minimum statutes are not a recent innovation in federal sentencing. The first mandatory sentencing statute was adopted shortly after the founding of this nation. <u>See</u> United States Sentencing Commission, <u>Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System</u> (hereinafter, the "Sentencing Commission Report"), at 6. While mandatory minimum statutes have existed for over two hundred years, their role in the federal sentencing scheme has expanded dramatically in the last twenty years.

Prior to the enactment of the Sentencing Reform Act of 1984 (the "Sentencing Reform Act"), the determination of the appropriate sentence in criminal cases was, in the vast majority of cases, left to the discretion of the sentencing judge.  Since 1984, however, the judiciary's discretion in sentencing has been virtually eliminated by the combination of the Guidelines and the substantial increase in mandatory minimum prosecutions.  It is our contention that the mandatory minimum statute at issue here is unconstitutional because Congress has created a sentencing system that has stripped the judiciary of its historic role in the sentencing process and has transferred that judicial power to the executive branch.  Thus, even if this Court were to conclude that Angelos' mandatory minimum sentence of 55 years presently under consideration is not inconsistent with the Eighth Amendment's prohibition against cruel and unusual punishment, the Court should still find such a mandatory minimum sentence unconstitutional as a violation of the separation of powers doctrine.

In <u>Mistretta v. United States</u>, 488 U.S. 361, 390-91 (1989), which upheld the constitutionality of the Guidelines, the Supreme Court recognized "the role that the Judiciary always has played, and continues to play, in sentencing" and noted "Congress' 'strong feeling' that sentencing has been and should remain 'primarily a judicial function.'"  In rejecting the claim that the Sentencing Reform Act was unconstitutional because it delegated legislative power to an administrative agency, the Supreme Court emphasized that the Sentencing Commission had been placed in the judiciary.  The Court further noted that "had Congress decided to confer responsibility for promulgating sentencing guidelines on the executive branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch."  <u>Id.</u> at 391 n.17.

In April 2003, Congress enacted the Feeney Amendment which effectively took the Sentencing Commission out of the judicial branch by providing that federal judges could not constitute a majority of the Sentencing Commission and by eliminating the power of the Commission to adopt grounds for downward departures. These changes to the Sentencing Commission, combined with the increased use of mandatory minimum statutes, have effectively stripped the judiciary of its historic role in sentencing.

Recently, Senior District Judge Edward Harrington eloquently observed:

> Under the Sentencing Commission Guidelines, the power to impose a sentence has been virtually transferred from the court to the government, which, as the prosecuting authority, is an interested party to the case. This transfer constitutes an erosion of judicial power and a breach in the wall of the doctrine of the separation of powers.
>
> Thus, the government, not only has the authority to prosecute crime and to decide the nature of the criminal charge to be preferred, but now has the power to determine the severity of the punishment. As a result, courts are required to react passively as automatons and to impose a sentence which the judge may personally deem unjust. There is a maxim of the law that no party can be a judge in his own case. That maxim is violated by the Sentencing Commission Guidelines.

United States v. Sidhom, 144 F. Supp.2d 41, 41 (D. Mass. 2001). See United States v. Dyck, 287 F. Supp.2d 1016, 1019, 1022 (D. North Dakota 2003) (holding that "[t]he advent of mandatory minimum sentences also divest sentencing discretion away from the sentencing judge" and urging judges to "speak out against unjust and unwise mechanisms of justice such as . . . mandatory minimum sentences").

The extent to which mandatory minimums have transferred sentencing discretion from judges to prosecutors was extensively documented in the Sentencing Commission Report cited above. That report noted that in the period between 1985 and 1990, the percentage of cases

in which defendants' conduct warranted the imposition of a mandatory sentence doubled from 10 percent to 20 percent. See Sentencing Commission Report at 38.[5] The Report also demonstrated that prosecutors exercised wide discretion in deciding when to charge mandatory violations and in accepting pleas to lesser charges. For example, the Report found that the mandatory gun enhancement for drug offenders was not charged in 45% of the cases in which the facts justified such a charge and that the enhancement was not sought in 65% of cases in which a prior felony enhancement was warranted. See id. at 43. Where mandatory violations were charged, prosecutors accepted pleas which did not involve a mandatory minimums in 31.5% of the cases and made substantial assistance motions in 18.9%. See id. at 45.

The Sentencing Commission's study fully supports Justice Kennedy's conclusion that "mandatory minimum sentences shift sentencing discretion away from courts to prosecutors. Under the federal mandatory minimum statutes a sentence can be mitigated by a prosecutorial decision not to charge certain counts." Justice Kennedy Speech, delivered Aug. 9, 2003 ("Kennedy Speech"), at 5. Similarly, the ABA's Justice Kennedy Commission has noted, "[w]ith the removal of judicial discretion and the introduction of sentencing guidelines and mandatory minimum laws, policy makers essentially empowered prosecutors to predetermine the sentence through their charging and plea bargaining decisions." ABA Justice Kennedy Commission, Report to the House of Delegates, *The Impact of Sentencing Laws and Practices*, dated Aug. 2004, at 17; see Kate Stith & William Stuntz, *Sense and Sentencing*, N.Y. Times, June 29, 2004, at A22 (" In this system, virtually all the power is in the hands of prosecutors.").

The district court judge now has all the *de jure* responsibility for sentencing, but little of the power to administer this function justly. Just as "the authorized powers of federal

---

[5] That report found that while there were then sixty separate mandatory sentence provisions in the federal criminal code, only four were used with any frequency. See Sentencing Commission Report at ii.

judges do not include the power to prosecute crimes" (In re United States, 345 F.3d 450, 452 (7th Cir. 2003) (citing Wayte v. United States, 470 U.S. 598, 607 (1985))) or "to tell prosecutors which crimes to prosecute or when to prosecute them" (id. quoting United States v. Giannattasio, 979 F.2d 98, 100 (7th Cir. 1992)), the prosecutor should not have the power to sentence.

By its changes to our sentencing system over the last twenty years, Congress has conferred on prosecutors *de facto* responsibility for sentencing and has unconstitutionally intruded on the proper functioning of the judicial branch. See United States v. Green, No. CR-02-10054, 2004 WL 1381101, at *32 (D. Mass. June 18, 2004) ("It may be that, taken together, the ways in which the Guidelines regime have transferred the power of sentencing to the Department [of Justice] add up to a joining of the power to prosecute and the power to sentence in one branch of government."); United States v. Mendoza, No. 03-CR-730, 2004 WL 1191118, at *7 (C.D. Ca. Jan. 12, 2004) (holding that one section of the Feeney Amendment violates the separation of powers because it "is a power grab by one branch of government over another branch").

Since Congress has now created a sentencing system that "unite[s] the power to prosecute and the power to sentence within one Branch" (Mistretta, 488 U.S. at 391 n.17), this Court should conclude that Angelos' proposed mandatory minimum sentence is unconstitutional.

## III.     Angelos' Mandatory Sentence Violates His Due Process Rights.

Angelos should be the beneficiary of individualized sentencing in connection with the sentence to be imposed. We recognize that due process implications may not justify a finding that a mandatory minimum statute is unconstitutional where the mandatory minimum imposes only a limited sentence. Where the statute dictates a cumulative and consecutive term of 55 years imprisonment, however, we submit that such a huge increase cannot be consistent

with due process without an individualized determination of whether the defendant's conduct and criminal history justify such a sentence.

As has been repeatedly observed, "[i]t is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion." Burns v. United States, 287 U.S. 216, 220 (1932); Dyck, 287 F. Supp.2d 1016 (individualized sentencing "is deeply rooted in our legal tradition and is a fundamental liberty interest"). "The fair method of sentencing is for an impartial judge, who is fully cognizant of an individual defendant's personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime, to impose sentence after deep reflection, informed by the judge's experience in life and in the law." Sidhom, 144 F. Supp.2d at 41.

Indeed, since a "due process right arises at sentencing because sentencing involves the most extreme deprivation of personal liberty and therefore calls for a highly individualized process where a person must be assessed and sentenced as an individual," the lack of judicial discretion "prevents the defendant from being sentenced as an individual as required by the Due Process Clause of the Fifth Amendment." Dyck, 287 F. Supp.2d at 1021 ("the Guidelines as applied . . . to the defendant violate due process as its interpretation robs the district court of all discretion necessary to sentence the defendant as an individual."). A failure by Angelos' sentencing judge to exercise his own discretion in imposing Angelos' full sentence, including its mandatory portion, is a violation of Angelos' due process rights.

As noted above, the traditional and historic function of the federal district court judge has been to exercise his discretion in imposing individualized sentences after consideration of all relevant circumstances bearing on the offense and offender. The federal sentencing

scheme severely restricts, especially in the case of a mandatory minimum sentence, a court's ability to assess the specific circumstances of a case in determining an appropriate sentence. See United States v. Tannis, 942 F.2d 196, 198 (3rd Cir. 1991) (Higginbotham, J., concurring) ("When we remove all discretion from trial judges and preclude them from making individual determinations, even for first offenders, it is doubtful whether society benefits on either a long term or short term basis.").

Under the current system, the federal district court judge -- the individual who is uniquely able to exercise discretion and who is most familiar with the defendant and his case -- is deprived of the authority to exercise his learned judgment in the face of a mandatory minimum sentence and is forced to apply a mechanical sentencing formula without regard to the unique facts of the criminal cases on his docket. While a crime may have various degrees, a mandatory minimum sentence imposes an inflexible and improper one-size-fits-all notion of punishment. See United States v. Langmade, 125 F. Supp.2d 373, 374-75 (D. Minn. 2001) ("mandatory minimum sentences -- almost by definition -- prevent the Court from passing judgment in a manner properly tailored to a defendant's particular circumstances. This is one case in which a mandatory minimum sentence clearly does not further the ends of justice"); United States v. Patillo, 817 F. Supp. 839, 841-42 (C.D. Ca. 1993) ("Statutory mandatory minimum sentences create injustice because the sentence is determined without looking at the particular defendant;" "Under the statutory minimum, it can make no difference whether he is a life time criminal or a first time offender. Indeed, under this sledgehammer approach, it could make no difference if the day before making this one slip in an otherwise unblemished life, defendant had rescued fifteen children from a burning building, or had won the Congressional Medal Of Honor while defending his country.").

Sentencing requires fundamental fairness and the consideration of individualized facts to determine what may be an appropriate sentence for a particular defendant. See Tannis, 942 F.2d at 199 (Higginbotham, J., concurring) (judges "are not sentencing widgets or robots, but human beings . . . [and] convicted defendants should be sentenced within the spectrum of what most able judges would consider fair and reasonable both for our society and for the sentenced defendant."). Such facts should include, but should not be limited to, the characteristics and gravity of the offense; the culpability of the offender; the offender's background and criminal history; the offender's character and his unique personal and other characteristics; the likelihood of committing a future offense; and the likelihood of rehabilitation. See e.g., ABA Standards 18-2.6, 18-3.4.

Justice Anthony Kennedy focused on these issues when delivering a speech last year at the ABA Annual Meeting. In the speech, Justice Kennedy focused on certain sentencing injustices and questioned the necessity and wisdom of federal mandatory minimum sentences. See Kennedy Speech at 4-5. He described such sentences as "unwise and unjust" and urged the ABA to tell Congress to "repeal federal mandatory minimums." Id. Thereafter, the ABA established the Justice Kennedy Commission, which issued a Recommendation in the last few weeks urging federal and state governments to repeal mandatory minimum sentencing statutes.

As the Kennedy Commission has concluded, sentencing courts must be able to consider "all relevant circumstances" and "the unique characteristics of offenses and offenders." Kennedy Commission Recommendation, dated Aug. 2004, at 27. An impartial federal district court judge should be permitted to exercise his "cold neutrality" (Edmund Burke, Preface to Brissot's Address (1794)) and to consider such mitigating circumstances and factors -- and all relevant aspects of a defendant's character and record -- prior to the imposition of any sentence

and to exercise a degree of thoughtful reflection and guided discretion that need not be "broad or unreviewed." Harmelin, 501 U.S. at 1007 (Kennedy, J., concurring). Individualized consideration of such mitigating evidence will result in a convicted individual, like Angelos, being viewed as a unique person, not as a member of an undifferentiated mass subjected to the rigid imposition of a sentence based only on a triggering statute.

Justice Kennedy has observed that "[m]andatory sentencing schemes can be criticized for depriving judges of the power to exercise individual discretion when remorse and acknowledgement of guilt, or other extenuating facts, present what might seem a compelling case for departure from the maximum." Harmelin, 501 U.S. at 1007 (Kennedy, J., concurring). The time has now come to redraw the line of individualized sentencing limited by Harmelin and to conclude that there is no logical sense to continue to maintain a distinction relating to the consideration of mitigating evidence between capital and non-capital cases. See Dyck, 287 F. Supp.2d at 1022 n.6 ("individualized sentences in non-capital cases are just as rooted in the Constitution as individualized sentences in capital cases. The fundamental respect for justice underlying the Fifth Amendment, capital or non-capital, requires consideration of the character of the individual offender and the circumstances of the particular offenses as a constitutionally indispensable part of the process of depriving a defendant of his life or liberty."); see also Williams v. New York, 337 U.S. 241, 249-50 (1949) (due process affords broad discretion to trial court judge as to sources and types of information that may be relied upon at sentencing). This Court is urged to so act.

"For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the

offender.  His past may be taken to indicate his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him."  Commonwealth of Pennsylvania v. Ashe, 302 U.S. 51, 55 (1937).  Accordingly, Angelos' due process rights would be violated if this Court were to sentence Angelos without exercising its discretion; without considering all of the characteristics -- related to person and offenses -- that constitute the make-up and personality of Weldon Angelos and the facts of the crimes for which he has been convicted; and without utilizing its training, experience and conscience.

**IV.    The Contemplated Mandatory Minimum Sentence
Violates Angelos' Sixth Amendment Right To
Trial By Jury Because It Is The Result Of Illegal Fact Bargaining.**

In Green, 2004 WL 1381101, at *2, Chief District Judge William Young of the District of Massachusetts assailed the government's use of its power to reward the defendant who pleads guilty and to impose a stiff penalty upon the defendant who chooses to exercise his constitutional right to a jury trial and then loses.  The court found that the government "has the power -- and the incentive -- to ratchet punishment up or down solely at its discretion.  It does so most often to burden a defendant's constitutional right to a jury trial and thus force a plea bargain."  Id. at *4; see nn.26, 93 (finding that a defendant in the District of Massachusetts who insists on a jury trial and is convicted gets a sentence that is 500% longer than a similarly situated defendant who pleads guilty and cooperates).

More specifically, the court found that the government had engaged in illegal and unconstitutional fact bargaining.  See id. at *9 n.69, *45-46.  Fact bargaining is "the knowing abandonment by the government of a material fact developed by law enforcement authorities or from a witness expected to testify in order to induce a guilty plea."  Id. at *4 n.25 (citation

omitted). "It occurs when a departmental attorney 'swallows the drugs' or 'the gun' as the case may be." Id. at *9.

In Green, the government was aware of a weapon recovered in a defendant's apartment and used it "as a negotiating chit prior to trial." Id. at *46. The court characterized this tactic as burdening the defendant's "exercise of his Sixth Amendment right by offering to withhold evidence of the weapon if he waived his right to a trial and saved the Department the burden of trying him." Id. Accordingly, the Green court held that such fact bargaining to induce a plea bargain and the related "heavy punitive price" imposed on the defendant who exercises his right to trial violates that defendant's Sixth Amendment right to a jury trial. Id. at *3-6, *33.

In this case, Angelos was initially charged with only one count in violation of 18 U.S.C. § 924(c), and the government offered him a plea deal with a promise of 15 years imprisonment. After Angelos rejected the government's offer, the government "visit[ed] drastic sanctions" on him (Green, 2004 WL 1381101, at *11), having a grand jury return a first superseding indictment which added four new counts under 18 U.S.C. § 924(c). Angelos then went to trial on all five 924(c) counts. This scenario is a classic example of illegal fact bargaining, and this Court should conclude that the government's actions violated Angelos' Sixth Amendment right to trial by jury by penalizing him an extra 40 years for exercising his right to a jury trial.

## CONCLUSION

For all of the foregoing reasons, Amici Curiae respectfully request that the Court hold that the proposed 55 year mandatory minimum and consecutive sentence for twenty-four year old and first-time offender Weldon Angelos constitutes (a) cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution; (b) a violation of the

separation of powers doctrine; (c) a violation of the Due Process Clause of the United States

Constitution; and (d) a violation of the Sixth Amendment right to trial by jury.[6]


Dated: New York, New York
     July 29, 2004

                    GREENBERG TRAURIG, LLP

                    Jeffrey B. Sklaroff

                    Harry H. Rimm

                    885 Third Avenue, 21st Floor
                    New York, New York 10022
                    Telephone: (212) 801-2100
                    Facsimile:  (212) 224-6110

                    Counsel for Amici Curiae

---

[6] These issues and arguments are also advanced to preserve them for appellate purposes.

## AMICI CURIAE

Buck Buchanan
United States Attorney
Northern District of Mississippi (1997-2001)

Zachary W. Carter
United States Attorney
Eastern District of New York (1993-1999)

Robert J. Cindrich
United States Attorney
Western District of Pennsylvania (1978-1981)
United States District Judge
Western District of Pennsylvania (1994-2004)

Robert J. Cleary
United States Attorney
District of New Jersey (1999-2002)
Southern District of Illinois (2002)

Veronica F. Coleman-Davis
United States Attorney
Western District of Tennessee (1993-2001)

Robert J. Del Tufo
United States Attorney
District of New Jersey (1977-1980)

W. Thomas Dillard
United States Attorney
Eastern District of Tennessee (1981)
Northern District of Florida (1983-1986)

John J. Gibbons
United States Circuit Judge
Third Circuit Court of Appeals (1970-1990)
Chief Judge (1987-1990)

Saul A. Green
United States Attorney
Eastern District of Michigan (1994-2001)

J. Alan Johnson
United States Attorney
Western District of Pennsylvania (1981-1989)

James E. Johnson
Assistant United States Attorney (1990-1996)
Assistant Secretary of the Treasury (1996-1998)
Under Secretary of the Treasury (1998-2000)

Gaynelle Griffin Jones
United States Attorney
Southern District of Texas (1993-1997)

Nathaniel R. Jones
United States Circuit Judge
Sixth Circuit Court of Appeals (1979-2002)

Nicholas deB. Katzenbach
Acting United States Attorney General (October 1964–February 1965)
United States Attorney General (February 1965-October 1966)

Timothy K. Lewis
United States District Judge
Western District of Pennsylvania (1991-1992)
United States Circuit Judge
Third Circuit Court of Appeals (1992-1999)

Andrew J. Maloney
United States Attorney
Eastern District of New York (1986-1992)

John S. Martin, Jr.
United States Attorney
Southern District of New York (1980-1983)
United States District Judge
Southern District of New York (1990-2003)

William A. Norris
United States Circuit Judge
Ninth Circuit Court of Appeals (1980-1997)

Denise E. O'Donnell
United States Attorney
Western District of New York (1996-2001)

Stephen M. Orlofsky
United States District Judge
District of New Jersey (1996-2003)

A. John Pappalardo
United States Attorney
District of Massachusetts (1992-1993)

James G. Richmond
United States Attorney
Northern District of Indiana (1985-1991)

Benito Romano
United States Attorney
Southern District of New York (1989)

Stanley J. Roszkowski
United States District Judge
Northern District of Illinois (1977-1997)

Herbert J. Stern
United States Attorney
District of New Jersey (1971-1973)
United States District Judge
District of New Jersey (1973-1987)

Harold R. Tyler, Jr.
United States District Judge
Southern District of New York (1962-1975)
Deputy United States Attorney General (1975-1977)

Ronald Woods
United States Attorney
Southern District of Texas (1990-1993)

Sharon J. Zealey
United States Attorney
Southern District of Ohio (1997-2001)

Donald E. Ziegler
United States District Judge
Western District of Pennsylvania (1978-2003)